FILED
IN CLERK'S OFFICE
U.S. DIS~~~~ C~~~~~ D.N.Y.

★ OCT 13 2023 ★

LONG ISLAND OFFICE

RECEIVED

OCT 13 2023

EDNY PRO SE OFFICE

2023 OCT 13 AM 9: 29

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X    Case No.

ERIC OWENS,

                 **Plaintiff,**

**CV 23 7730**

                      <u>COMPLAINT</u>

          - against -

**PLAINTIFF DEMANDS**

**A TRIAL BY JURY**    AZRACK, J.

                                         TISCIONE, M.J.

1. The Incorporated Village of Garden City

2. County of Nassau

3. Kenneth O. Jackson, Police Commission, GCPD

4. Russell Police Officer, Garden City Police (GCPD)

5. Sergeant Punch, GCPD

6. All Police Officers in the video, John Doe's, GCPD

7. Supervisor / Officer that hung up the phone, GCPD.

**Defendant(s) in their Individual and Official Capacity**

------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that I, <u>**Eric T. Owens, residing at** <u>48 Kennedy Heights Glen Cove, NY 11542</u></u>, pursuant to <u>*42 U.S.C. § 1983*</u> do hereby make claim against the above named defendant(s) for violating my rights Under the United States Constitution,  For violations of my Civil Rights, for violation of my Human Rights; for violating the rights afforded to me as "a person with a disability" (medical and mental health) after being made aware

of both conditions, for violation of my rights under NYS Constitution, violation of Federal and State Criminal law, false prosecution, defamation of character, and violation of police procedures and policies:

Defendant(s) Garden City Police Commissioner, Police Officer(s), supervisors and The Incorporated Village of Garden City are located at: 349 Stewart Ave, Garden City, NY 11530.

Defendant County of Nassau Attorney for County is located at **Thomas A. Adams, County Attorney Office** One West Street Mineola, New York 11501.

Defendant(s) were notified via Notice of Intention pursuant to NYS Law

## JURISDICTION AND VENUE

Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) as the acts complained of occurred therein.

I  **Eric Owens** depose and state under the penalty of perjury, that all stated herein is true.

## NATURE OF THE CASE

**The damages for which I make clam, as hereinafter more particularly described, were sustained beginning at 10:28 PM, and continued until 11:30 PM on the 7ᵗʰ day of January 2023, beginning at Old Country Road, & Carle Place, Carle Place, NY, continuously ending 2.5 miles away on Garden Street, Garden City, NY: and continued as of 9/9/23 as a result of the Employees of The County Of Nassau.**

**The damage was sustained in the following manner, to wit:**

1. Plaintiff stopped at the red-light heading S/B on Glen Gove rd., and Old Country Road of which _not_ Garden City, But Carle Places in the County of Nassau.

2. When the light turned green, Claimant was drove across Old Country Road, traveling South Bound on Clinton Ave, when I noticed police lights in my rear-view mirror, 3 cars behind me turning from Old Country Road onto Clinton Ave.

3. The officer was 3 cars behind me, in the right lane of traffic after he made the turn.

4. I purposely kept one eye on the road in front of me and one eye on the officer 3 cars behind me in the right lane, because of his lights when he turned, I was preparing to signal, and safely move from the far right of the s/b lane, to the left of the S/B lane; closes to the traffic lane heading N/B to allow the officer access to whatever emergency I thought he was responding to.

5. After I moved over, I was now in front of the vehicle that allowed me to pass, (as stated in Officer's Russelle's Deposition).

6. As I drove, I kept my eye on the patrol car, which I noticed was moving very aggressively and was now directly behind me.

7. I then stopped at a red light at the corner of Steward Ave and Clinton, the police car had also stopped, now directly behind very, very close, in an intimidating way.

8. It was at that time that I realized that the officer was following me and I became very nervous, because it was 10:30 PM at night, Garden City Police has a history of racial profiling, stopping and violating African American Men Constitutional Right; not to mention that only a few hours ago, on the same day that this

claim arose (1/7/2023), Plaintiff heard reports of an African American Man, who later died, was seriously beaten during a traffic stop; which contributed to the Plaintiff's fear and anxiety when I discovered that the officer was following me.

Killing of Tyre Nichols



Wikipedia

https://en.wikipedia.org › wiki › Killing_of_Tyre_Nic...



On January 7, 2023, **Tyre Nichols**, a 29-year-old black man, was fatally injured by police officers in Memphis, Tennessee, dying three days later.

Location: Memphis, Shelby County, Tennessee, ...

Charges: Second-degree murder; Aggravated ...

Date: January 7, 2023 (traffic stop); January 10, ...

Accused: Tadarrius Bean; Demetrius Hale

9. Once the light turned green, I proceeded to drive, heading across the train tracks located at and again noticed the officer was right on my back bumper following me as I crossed on Clinton Ave, and St. James., (of where officer Russelle all writes in his deposition that he clocks me going 44 in a 30, nothing there but railroad tracks that a driver must go slightly upward to cross, impossible to speed there. *"st. James Place and Clinton Road, see Google Earth"*.

10. As I crossed the tracks, I proceeded to drive another 4 blocks, with the police car directly behind me at which time Officer Russell turned on his lights and pulled me over.

*(I pulled over onto Garden Place, (which is a total of 2.5 miles from Old Country rd. where the officer began to follow me, approximately 0. 5 miles, from when I moved over, and allegedly crossed the warning line separating the N/B from the S/B.*

11. Officer Russelle approached my vehicle and demanded my license.

12. I refused to provide him with anything because I knew I did nothing wrong; and I knew he profiled me, and followed me and   I was in fear for my life, he followed me very aggressively, and I did not trust he was a police officer; and he would not identify himself.

13. I repeatedly asked Russell for his badge number and name, and he continued to refuse.

14. I begged Russell to not do this to me I have to get to work (pointing to my employee's name tag that was pinned on the right of my shirt which had my name "ERIC" and my employer's name (at that time) "Greystar Management".

15. The office refused to identify himself, he also refused to state the reason why he followed me from Old Country Road all the to nearly 2 blocks from Hempstead, then got close behind me for another several blocks, at 10:30PM at night on a very narrow stretch of street, scaring me.

16. I then requested a supervisor.

17. Thereafter, several other officers and a sergeant arrived at the traffic stop, and they used their cars to surround my car, and refused to identify themselves after I requested them to do so.

18. I explained to the sergeant that the guy followed me all the way from Old Country rd,  I did nothing wrong and only had my music playing loud, I continued, "he was right on my bumper as we were both stopped at

a light, he continued to follow me after the light changed he scared me. If he is a cop then by him doing what he did following closely, scaring me on this narrow road put myself and every other driver lives in jeopardy, because I had to watch traffic in front of me, traffic on both sided of me, (S/B far right lane and N/B lane close to my left) and watch the lone, white guy, in a police car, following me, at nighttime. If I did do anything wrong, why didn't he just stop me? I he wouldn't tell me who he was or why he was stopping me, I don't trust him.

19. The Sergeant stood by telling me to "be quiet."

20. I asked the officers several times to arrest me, tell me what I did wrong, or let me go, because I did nothing wrong.

21. After ½ hour into the stop, I gave my entire name and birthday to 1 of the officers, who did a check and repeated some personal information that he obtained from the check and I said "yes, that's me".

22. The sergeant finally identified himself as "Sgt. Punch".

23. I then gave officer Russell my driver's license, and he took it and returned to his car which was parked behind me.

24. Officer Russel was taking a very long time to write the ticket, give me back my license and allow me to go.

25. I asked Seargent Punch, "why is he taking so long to give me the ticket and my license so I can leave? Please tell your officer to either give me the ticket and let me leave or arrest me. I've been sitting in this position too long, I have a protruding hernia and I suffer from serve Anxiety and depression, please let me go or arrest me'.

26. Sergent Punch told me to shut and be quiet, you made him wait, now you are going to wait.

27. I began to panic, become afraid and have an anxiety attack, sweating furiously and crying.

28. All Officers on the scene and Sergent Punch stood there smiling and did nothing.

29. I explained to them that they have kept me sitting in the vehicle for a very long time, I have medical conditions: a large hernia inside my stomach, and a surgery to my stomach where parts of my intestines were removed and sitting in this position is causing me not just emotional pain but physical as well.

30. My cries to the officer and sergeant went unheard and they continued to detain me inside the car as I begged them to please allow me to leave because they were making me late for work.

31. Feeling very threatened and afraid, I called 911 and reported to the dispatcher that an Officers from GCPD stalked me, was behind my car scaring me, stopped me and now they have my vehicle surrounded, and holding me hostage and refusing to either arrest me or left me go.

32. The dispatcher, of which was NCPD transferred me to GCPD, at which time I asked for the supervisor.

33. I was transferred to the supervisor and stated, "your officer followed me, stopped me and is holding me hostage and refusing to let me go..."

34. He stated "is this the guy on Garden st? "

35. I said "yes", and he hung up the phone. Requested help and the lieutenant hung up the phone on me.

36. After about 45 minutes into the entire encounter, I got out the car, walked to Rusell's car and observed him sitting in his cruiser relaxing.

37. I asked him to please give me the ticket so I could go, he sat in the cruiser and waved the completed tickets at me to indicate to me that he's been done but he's not giving them to me.

38. All of which I have stated in the above, including line 21 was recorded by me with audio and will support this action.

39. Officer Russell gave me 3 tickets which included false testimony on the tickets and supporting depositions.

40. This officer intentionally profiled me, followed me for a half a mile, stopped me unlawfully, and then unlawfully detained me and wrote a false statement against me under oath and in his supporting depositions.

41. The claimant suffered severe emotional and physical pain because of the unlawful encounter and will submit medical and psychiatric documentation of such.

42. Supervisors failed to stop the unlawful detention, Garden City and its police department failed to properly train and supervise its employees.

43. The claimant intents to submit audio and video evidence in support of the action as well as the officers very own ticket that he wrote of which will show his deliberate lie, obstruction of justice and justify profiling, stopping, and detaining the claimant.

1. *Violating my rights to be free from unlawful seizure and detainment of my person and effects (vehicle)*

2. *Violating my rights to speak*

3. *Violating my rights to Due Process*

4. *Violating my rights as a person with a disability*

5. *Abuse of Power and Authority*

6. *Violating my rights not to be falsely accused*

7. *Harassment and menacing.*

8. *Defamation*

9. *Intentional infliction of mental and emotion pain; and anguish*

10. *Humiliation*

11. *Malicious prosecution*

12. *Violating free speech*

13. *Violating my rights to travel freely.*

14. *Racial Profiling by law enforcement*

15. *Failure to intervene by Officer on the scene and supervisors on the scene.*

16. *Failure of supervisor / officer (that was called and made aware to intervene).*

17. *Failure my Police Commissioner to properly train, discipline and supervise his officer's.*

44. Plaintiff, respectful ask that the Court "Orders" that Counsel for the defendant(s) identify all John Doe(s), in the picture's, identify the Supervisor that hung up the phone, and all officers that were on the seen during the January 7, unlawful stop and detention; so that the Plaintiff can effectuate service of the summon and complain to all defendants pursuant to Federal Civil Practice Law requirements.

45. Plaintiff further asks the Court that once all officer(s) have been identified by name, and submitted to the Plaintiff, then the Plaintiff then be allowed to Amend the complaint and caption, as well as the compensation for damages being sought.

46. Plaintiff asserts that Officer Russell purposely and willfully profiled and targeted the Plaintiff (as he was traveling the roads the USA) and because Plaintiff's was a Black Male, playing load music from the vehicle, 10:30PM at night, entering Garden City Officer Russell, followed me (staking: Criminal Offense # 1), stopped me, refused to ID himself to me, held me against my will for 40 minutes (Criminal Offense #2 kidnapping / Unlawful Confinement) , made up 3 motor vehicle violation charges against me of which he swore to in all 3

accompanying depositions ( Criminal Offense # 3, 4, and 5).

47. Officer Russell's Criminal behavior continued when after about 40 minutes, I took the chance, got out of my vehicle, walked over to his patrol car, which was behind me only to find him sitting in his patrol car relaxing, and after I repeatedly I asked him to "please give me the ticket and let me go, you made me late for work" Officer Russell held up the already completed tickets and began waving them at me; gesturing "I been completed the tickets, you'll get them when I'm ready to give them to you". (Side note: if he plays nah, nah, nah, nah, nah with a ticket, wonder what kind of games he'd play with that gun on his hip? Better yet, what games has he already played abusing his power and authority? I will FOIL or under P. I., or civil discovery check all cases he's ever been involved in. Officer Russell and the other officers were far to nonchalant and comfortable doing what they were doing to me; a clear indication that they've done this to others and get away with it.

48. Officer Russell waving them tickets at me was intentionally done, meant to harass (Criminal Offense # 6, and menace (Criminal Offense # 7) and to continue to inflict me with further emotional pain and suffering.

49. I will prove that Officer Russell committed these Criminal Offense(s) because I am Black (Federal and State Hate Crime offense(s) # 8).

50. Obstruction of Justice (Criminal Offense # 9).

51. And when we tie Officer Russell's behavior all together and apply Federal and State Law, we will also find the Criminal Offense of "Conspiracy".

52. In the 1st of Officer Russell's ticket and sworn deposition he stated that he "observed" me conduct an "unsafe start", at 10:38 PM; after the red light turned green at SB on Old Country Road.

53. The location Officer Russelle claims the unsafe start allegedly occurred is Carle Place, NY (see map(s), and not Garden City, Officer Russell Knows that he lacks Jurisdiction, Garden City Traffic Court, of which the urged

me to "plead guilty because it's a lot of points" ; which Shows how bias and prejudicial the Court is (which by the way the Court is only down the steps from the Garden City Police, literally only yards away). Knows that it lacks jurisdiction; what they all didn't know was that I knew.

54. Officer Russell was so dead set on violating me as a Human as a Black Man, that he did care about jurisdiction.

55. Next 2ⁿᵈ ticket Officer Russell stated that after the "unsafe start", I moved from the far-right lane heading SB, into the right SB lane, in front of another vehicle; and while in doing so my driver's side, front wheel went outside of the double warning lines, which separates the 2 NB lanes from the 2 SB.

56. Here we find Officer lying again, because if he states I did this while passing in front of another car, it would have been impossible for Officer Russell (whose 3 cars behind me, still in the far-right lane) to have seen my front driver side tires. Not only was I driving a large Jeep, but it was 10 PM at night, along a road that had no streetlights.

57. He then writes that this took place at the same time 10:38PM, and at the location "Old Country Rd", which makes absolutely no sense legally, because if I was "observed" crossing the lines I have a right to know where, when and what time.  Officer Russell failed to do so. How could I defend myself against the charge? Suppose I wanted to seek video from the house(s) along that road to prove my innocence!

58. That opportunity was lost legally, because it never happened; either way I can't prove via video without location and time.

59. Officer Russell 3ʳᵈ ticket states he clocked me going 44mph, in a 30. (a reasonable person knows that innocent civilians, **Do Not** speed when a cop car, is driving directly behind them, we slow down, if you're a Black or Brown person, alone, and it appears to be a white cop, we go a bit under the speed limit), not to mention the location in which he claims that he paced me are rail road tracks that a driver must go up, over, then down, that's st James place.

60. Officer Russell's sworn statement in essence says that I committed 2 traffic violations, and he did stop me, then I committed a 3rd "speeding" and he decided to stop me; 2.5 miles from Old Country Road where the 1st violation occurred.

61. I don't know where the 2nd allergy occurred, because Officer Russell never documented the location and time.

62. On March 28, 2023, I submitted to the Garden City Court a Motion to Dismiss, raising the issue of "Lack of Subject Matter Jurisdiction" for the unsafe start and the Constitutional Rights Violation(s), along with the lies in the disposition; sighting that a "reasonable person" could not believe the charges were true.

63. I also requested as an alternative a "Speedy Trial".

64. Sergeant Punch had a duty and legally responsibility to properly supervisor his officer, to protect me from any criminal conduct and to protect my rights as a citizen under the U. S. and NYS Constitution and he failed to do so.

65. Sergeant Punch stood after at the scene and allowed me to be unlawfully detained, held against my will, and while Officer Russell sat in his car waiving the completed ticks at me.

66. The Garden Court Clerk called me in April of 2023 and stated that the Court was working on a response to my motions, and I should have it in a week.

67. At the time of this writing 10/10/2023, updating and editing, none of my motions have been answered (7 months).

68. On April 7th, 2023, I filed a Notice of Intention with the County Attorney naming the officers, the City of Garden City, and its PD as defendants.

69. On that same day I also submitted copies of said notice to the GC traffic Court Clerk, 1 to the DA, and a courtesy copy to GCPD.

70. Thereafter Garden City attorneys sent me a letter scheduling me to attend a 50h hearing in, of which I willfully did not attend.

71. My reason(s) for not attending were: I had 3 tickets pending, and I did not want to incriminate myself; thereby exercising my Fifth Amendment Right, I was continuously being denied employment because of the pending tickets and because the traffic court is not subjected to speedy trial laws (which I will address later in this complaint), I had no idea when the traffic court would call me for trial; thus although the civil rights violation(s) initially occurred on 1/7/23; the negative effects continued, until on Sept 3, 2023, and will continue until the tickets are resolved.

72. Thereafter, I received a subpoena from the Nassau County Clerks Office ordering me to a 50h hearing, under the threat of arrest and / or fines.

73. I immediately personally delivered a letter to the County Attorney objecting to the 50h hearing citing: I have 3 pending tickets and I did not want to incriminate myself, the traffic court is violating my rights regarding answering my motions and delaying trial, of which is effecting my ability to become employed and because the notice of intention that I served never named Nassau County as a defendant.

74. On August 21, 2023, I went to the Nassau County Attorney's office pursuant to the subpoena and the clerk had no idea of a 50h hearing and stated that the person in charge was not in.

75. She further questioned me, asking, "why didn't you call to confirm"? while stuffing donuts in her mouth. (video captured).

76. I told her that this is my "why do I have to call to confirm my presence when it was this office that compelled

me to be here, under the threat of arrest / or fine? Madam, this is very unprofessional of government officials, you're running back and forth, pass me, trying to talk to me while stuffing donuts in your mouth, this is my life that you guys are continuing to play with, and you seem to be just having a good ole time".

77. The clerk's response was, "well what am I supposed to do, we just had a party here".

78. As a recovering person, and a NYS Certified, CASAC-T; as well as a former forensic substance use case manager, I conclude that she was inebriated, video supports this.

79. On 09/3/23, I was denied my dream career; and I filed a new notice of claim on all parties a week later citing the denial(s), and name the Nassau County, The Incorporated Village of Grden City, The Town of Hempstead (which I no longer intend to be a defendant), and the other GCP officer's as defendants.

80. Plaintiff has since spoken with the hiring manager who has agreed to confirm that the pending tickets caused the rejection for employment.

81.  Again, Garden City Traffic Court has not responded to any of my motions, which is an indication of how they are so willing to protect Officer Russell that the court is willing to further violate my Constitution Rights

82. To protect Officer Russell, the Court violates my rights, which shows how the obstruction of justice continues, even in the place where it's supposed to execute justice and render judgment.

83. On June 29, 2023, I called and spoke with the Traffic Court Clerk asking him the status of my motions requesting a speedy trial.

84. The Clerk advised me that "no trial date has been set yet".

85. He made no remarks regarding my motion to dismiss the 1st charge due to "lack of Jurisdiction", or about any of my other motion's.

86. Officer Russell's violations has caused even more violation of my rights: 3 open tickets, with no disposition which has been preventing me from obtaining employment (since no longer employed) because the charges appear when a DMV check is conducted whenever I apply for a job, thus deny me the right to "Life... and Happiness".

87. Be advised that I have the entire encounter on video and audio recording of which includes: my car surrounded by GCPD vehicles, obstructing my ability to travel, Sergeant Punch standing there doing nothing and telling me to be quiet, 4 other GCP on seen surrounding my vehicle, me screaming in pain and having an anxiety attack, me begging them several times, " please give me the ticket, arrest me or let me go", officer Russell sitting inside his patrol car waving the tickets at me, officers refusing to Id themselves and much more; in fact a viewing of the video you would not think this was America nor that these guy were Police Officers; sworn to serve and protect; you will see gangsters, with guns.

88. I felt helpless and further afraid and emotional distraught that not even the top brass police will protect me as they are sworn to do.

89. Supervisor(s) have a Constitutional duty to protect my rights once they are aware that their officers were violating them, and they failed to do so.

90. This stop could have turned out with me losing my life, and cops that do what was done to me must and should be held accountable before another person dies.

91. Officer Russell is dangerous to Blacks, the community he serves and to his fellow officers.

92. His actions have not just affected me physically, psychologically, and emotionally; but also, have negatively, affected the Garden City, GC Traffic Court, all Officer, and Supervisors on the scene and a supervisor that wasn't even there.

93. He must be fired and arrested, before he kills someone.

94. I can and will prove that he's a liar, he falsified charges, committed criminal acts under the color of law, stalked me, held me, harassed, and menaced me because it's all on audio and video as well as in his very own ticket and deposition's.

95. Cell phone video will show that Officer's had their patrol vehicle around Plaintiff's vehicle, which prevented him from leaving.

96. It will show Plaintiff at Russell's window begging and pleading him "please give me the ticket and my license I must go to work. Give the tickets, arrest me, or just let me go, please!

97. It will show Officer Russell sitting in his patrol car taunting the Plaintiff by waving the tickets at Plaintiff.

98. It will show officer Russell several times, wave the tickets, put them down, face forward ignoring the Plaintiff.

**Fourth Amendment Violation: Traffic Stops Based on Race (Profiling), Unlawful Detention**

99. Officer Russelle had no justifiable reason to stop the Plaintiff, and his very own tickets and disposition will prove this.

100. The racial injustice by in GCPD reaches from the it's streets, police and into its traffic court *(Justice delayed is justice denied)*.

101. The delay in adjudicating the 3 false tickets written by officer Russell has caused the Plaintiff to be denied employment that requires a driver's license in good standing.

102. Most recently, In August of 2023, Plaintiff finally got called for an interview working with NICE Buss Company after waiting 6 years,

103. Plaintiff was required to bring in a most recent driver's abstract, met with the hiring manager, who was very impressed with Plaintiff's background and clean drivers.

104. During the interview, I was able to overcome my past criminal history, and behavior and was offered a paratransit driving position at $19.98 per hr., as well as free CDL training and once completed, Plaintiff's would become a full-time Bus Driver at a starting salary of $23 per hr.

105. As I was about to leave, the hiring manager asked, "oh, by the way do you have any tickets or any court cases pending"?

106. I stated yes, and tried to explain the circumstances surrounding the 3, unlawful tickets and that I put in a motion to dismiss and speedy trial request in March, but the court never answered anything I send them.

107. After I revealed everything to the hiring manager, whose best interest is for his company and not law or civil rights violations, he stated to me, "those are serious tickets, and in Garden City where we're located. I can't put you through, I will have to rescind the offer".

108. Thereafter in September I contacted the GCTC Clerk and explained to her how none of motions have been answered, and I cannot obtain employment with these charges pending.

109. At that time, the clerk informed me that my trial was scheduled to take place back in August, but "we errored in communicating that to you, your scheduled for Oct. 23, 2023".

110. GCPD has no Black Police Officer's, nor does any Blacks work in its government.

111. Plaintiff now names The County of Nassau as a Defendant in this action.

112. The County of Nassau knew that Officer Russell had a history of racially profiling Black Men and violating their constitution rights and the County did nothing but settle cases against officer Russell and Nassau County DA's Officer declined to prosecute of Russell.

113. The County failed to order training, inclusion, and diversity in the GCPD,

114. The County failed to set in place a system that would monitor GCPD.

115. Had Nassau County did something, Officer Russell would not have been on the force and arrested.

116. $150,000 settlement that the County paid out for officer Russell did nothing to correct the problem, and as a result the problem was allowed to continue and violated my rights.

117. There is a *"Direct Link"* between the Nassau County and the defendant who has a history of unlawful policing.

118. Plaintiff names The GCP Commissioner, Kenneth O. Jackson as a Defendant as well.

The GCP Commissioner failed to properly supervise his Police Department, his Supervising Officer's, his Officer's and especially Officer Russell.

 *a.* The Commission of GCPD also has a *"Direct Link"* , because he knew about Officer's Russell unlawful policing of Black Men, and yet he (the Commissioner), allowed officer Russell to not just be out on patrol, but to be out on patrol at night, by himself, no body cam, patrolling an in an area where many Black's travel, coming from Hempstead to go to Roosevelt Field Mall; thereby the Commissioner's negligence, he failed to supervise, he failed to provide a department of inclusion and diversity, he failed train, he failed to discipline, he failed monitor the supervisor under him, and he definitely failed to monitor Officer Russell, train officer Russell, and not allow Officer Russell to patrol at night, by himself; in an area commonly traveled by Blacks and Hispanic, the Commissioner actions and lack thereof, shows an "deliberate indifference" to safe guard the

public, which led to officer Russell's violations, the sergeant violations, the officer's that stood around watching and did nothing, and the violation by the supervisor that hung up the phone; the commission is liable.

The County, the GCP Commissioner, the sergeant all knew that Officer Russell, racial profiles Black Men and even did so to a fellow law enforcement officer, which shows that his predictor behave holds no bounds and they allowed him out unwatched ***"Supervisory police officials were not entitled to qualified immunity when they knew of police officer's violent propensities yet failed to take action against him to prevent him from coming into contact with the public; officer had previously even held other officers and acting police superintendent hostage at station, yet was restored to duty". Camilo-Robles v. Hoyos, #97-2260-97-2262 & 97- 2264, 151 F.3d 1 (1st Cir. 1998)"***.

119.     Plaintiff, In March of 2023, submitted a motion to dismissed and speedy trial to GC Traffic Court regarding the 3 tickets.

120.     Plaintiff called the clerk several times who stated, "no trial date yet".

121.     When Plaintiff realized that the Court was protecting the officer's and violating my rights, Plaintiff personally, on 2 occasions delivered documentation to the Nassau County Attorney's Office informing them about the entire incident and that GC Court is violating his rights, not answering his motions (which is causing him to be rejected by employers) and the GC Traffic Court is doing this to protect a bad cop.

122.     The County Attorney took no action but subpoenaed Plaintiff to a 50h hearing to be held on August 31.

123.     1 week prior to the date of the subpoena Plaintiff personally delivered a letter to the CA objecting to the hearing, informing the CA that Plaintiff will plead the 5th, because GC traffic Court still has not answered his motions and are still allowing the 3 tickets to go unadjudicated.

124.     On August 31, 2023, Plaintiff reported to the NCA's Office pursuant to the subpoena for a 50h hearing and nobody in the CA's Office knew anything about a hearing and stated that "the person is not hear. Did you call to confirm?"

125.     Plaintiff explained that he is not obligated, under the law, to call and confirm; when the government is using its powers to bring in the Plaintiff with threats of jail and fines.

126.     Claimant will submit a NOI to file a claim against the County of Nassau.

127.     Plaintiff realizes that such notice is required to be submitted within 90 days from the date of the incident and Plaintiff did yet did not name the County as a defendant.

128.     The County placed itself as a defendant when it subpoenaed the Plaintiff to the 50h hearing regarding the filing of the NOI.

129.     Plaintiff also points out that although the incident occurred 7 months ago, the County's was made aware that GC Court is violating my rights and costing me good employment by not adjudicating the tickets.

130.     The last time plaintiff made the CA aware was August 2023 and they did nothing.

131.     A municipality may not be held liable for its employees' constitutional violations under a general *respondeat superior* theory. *__Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). In Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected__*

*application of a heightened pleading standard to municipal liability claims brought pursuant to 42 U.S.C. § 1983.Id. at 168; see also Hall v. Marshall, 479 F. Supp. 2d 304, 316 (E.D.N.Y. 2007); Nesbitt v. County of Nassau, No. 05-cv-5513, 2006 WL 3511377, at \*3-4 (E.D.N.Y. Dec. 6, 2006).*

132.    Under Section 1983, a government entity—such as a city or county—cannot be held indirectly responsible for its officers' actions.   But a government entity may be held directly responsible where a policy, custom, or practice is the "moving force" behind a constitutional violation. *Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).*

133.*"It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); see also Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.) ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required."), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). As the District Court properly noted, a defendant who occupies a supervisory position may be found personally involved in the deprivation of a plaintiffs constitutionally protected liberty interests in several ways: The defendant may have directly participated in the infraction. . . . A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. . . . A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. . . . Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event. . . .Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference" to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place. McCann, 698 F.2d at 125; see also Meriwether Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989)".*

134.

135.Officer Russell has a history of racially profiling, following, stopping, detaining, and unlawfully arresting Black Men and once violated the right of a few Black Law Enforcement Officer.

*Garden City to Pay Man Who Alleged Racial Profiling Source: ERASE Racism NY May 14, 2018:*

*"In 2016, Ronald Lanier, a retired black Nassau County correction officer, was allegedly assaulted by two white Garden City police officers, George Byrd and John Russell, who mistakenly took him for a black man who had allegedly shoplifted a purse from a village store. Lanier was shopping in a supermarket in Garden City Village—the village is 91% non-Hispanic White—when the two officers ordered him to put his hands behind his back, and threw him to the ground. Lanier claimed that the officers whispered in his ear, "You want to be a tough guy?" and then beat him on both sides of his ribs. He said that he complied with their orders and said, "I am on the job" — a phrase that law enforcement officers use to identify themselves to each other—and questioned why he was being detained, saying he had done nothing wrong.*

*The lawsuit claimed Ronald Lanier was assaulted both verbally and physically by police and sought at least $40 million in damages. The case recently resulted in a settlement that ordered the Village of Garden City and its police department to pay Lanier $150,000.*

*"HEMPSTEAD, NEW YORK — On May 14, 2018, the Federal District Court entered Judgment against the Village of Garden City in favor of Mr. Ronald Lanier. In response, Frederick K. Brewington of The Law Offices of Frederick K. Brewington confirmed that the Village of Garden City and the Garden City Police Department agreed to have a judgment entered against them in the amount of $150,000 to be awarded to Ronald Lanier, a retired Nassau County correction officer and an African-American, who was verbally and physically abused and assaulted by a two Garden City police officers who falsely accused him of theft and them cuffed him and deprived him of his liberty".*

*"The Supreme Court determined it was a violation of the Fourth Amendment for a roving patrol car to stop a vehicle solely based on the driver appearing to be of Mexican descent. "A roving patrol car must have articulable facts that allow for an officer to have a reasonable suspicion United States v. Brignoni-Ponce, 422 U.S. 873 (1975)",*

Page **22** of **42**

**_The Equal Protection Clause and Race_**

_**Although neither the Fourth nor the Fourteenth Amendment prohibits the use of race when it must be employed and does not result in an unfair application of the laws, the Constitution forbids police officers from targeting individuals for investigation solely on the basis of their race. Thus, if a law enforcement officer adopts a policy, employs a practice, or in a given situation takes steps to initiate an investigation of a citizen based solely upon that citizen's race, without more, then a violation of the Equal Protection Clause has occurred. Skin color does not justify heightened suspicion for all members of a particular race.**_

_"The Fourth Amendment protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980)"._

109. No person _"may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendenhall, supra, [446 U.S.] at 556 [100 S.Ct., at 1878]_

136.    Federal Courts has held that out of violation that cover the Fourth Amendment, an officer that detains someone too long, is the worst of the Fourth Amendment violation. "_**The most intrusive, type of contact is an arrest or prolonged detention, which requires "probable cause to believe a crime has been committed and that the person stopped committed it." Flowers, 909 F.2d at 147**_"

137.    Writing for a majority of the Court, Justice Ruth Bader Ginsburg held that _"a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."._ _Consequently, a traffic stop becomes unlawful if "it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation T[¹] herefore, the officer's authority to continue the stop ended once he completed his investigation of that infraction, Rodriguez v. United States, 575 U.S. 348 (2015)_

138.    An individual *"has been constitutionally seized, only when, by means of physical force or a show of authority, his freedom of movement restrained. "Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards". California v. Hodari D. :: 499 U.S. 621 (1991)*

139.    *"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred". Terry v. Ohio (1968)*

140.    Garden City Police Department was allowed to sit, in unmarked vehicles, from the beginning of GC, at both Carle Place S/B of Clinton, and Hempstead, NY N/B of Clinton, while under the supervision the commissioner, *and use electronic surveillance devices (binoculars) without a warrant and look inside motorist vehicles'*, then stop them for cell phone and / or seatbelt violations.

141.    That specific area of their patrol is used by many Blacks and Hispanics to travel from the mostly Black Hempstead, to go to Roosevelt Field Mall.

142.    That specific area is also use by Hispanic truck drivers' trying to make an honest living delivering large items and landscaping.

143.    Many of the GCPD stops have been of Black and Hispanic Motorist.

144.    Plaintiff will ask the Court to Order the data on the racial stats of the motorist stopped along that area and compare with the number of motorists on the other side of GC where most whites travel.

145.    18 U.S. Code § 1951 - Interference with commerce by threats or violence

146.    *"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of*

*any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both. The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.*

*The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. The term "commerce" means commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45".*

### Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law

*This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S. This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race. Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement*

*officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws, statutes ordinances, or customs. Punishment varies from a fine or imprisonment of up to one year, or both, and if bodily injury results or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined or imprisoned up to ten years or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.*

## Title 18, U.S.C., Section 241 - Conspiracy Against Rights

*This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same). It further makes it unlawful for two or more persons to go in disguise on the highway or on the premises of another with the intent to prevent or hinder his/her free exercise or enjoyment of any rights so secured. Punishment varies from a fine or imprisonment of up to ten years, or both; and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title or imprisoned for any term of years, or for life, or may be sentenced to death.*

## All Defendant(s) Barred from Qualified Immunity Defense

147.    "Qualified Immunity "[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted); see also Krainski v. Nevada ex. Rel. Bd. of Regents, 616 F.3d 963, 968 (9th Cir. 2010); Richardson v. McKnight, 521 U.S. 399, 407-08 (1997); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). 33 Qualified immunity is only immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. See L.A. Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993); Am. Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816,

818 (9th Cir. 1991). a. Basic Principles (1) Eligibility The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001),

148.     The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" Saucier, 533 U.S. at 201; see also Scott v. Harris, 550 U.S. 372, 377 (2007); Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (per curiam); Hope v. Pelzer, 536 U.S. 730, 736 (2002); Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060 (9th Cir. 2006); Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). Second, the court must determine whether the right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Brosseau, 543 U.S. at 199-201; Hope, 536 U.S. at 739; Garcia v. County of Merced, 639 F.3d 1206, 1208 (9th Cir. 2011); Rodis v. City & County of San Francisco, 558 F.3d 964, 968 (9th Cir. 2009); Inouye, 504 F.3d at 712; Kennedy, 439 F.3d at 1060; Estate of Ford, 301 F.3d at 1050; Sorrels, 290 F.3d at 969. Even if the violated right was clearly established at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant legal doctrine . . . will apply to the factual situation the [defendant] confronts. . . . [Therefore, i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." Saucier, 533 U.S. at 205; Kennedy, 439 F.3d at 1061; Estate of Ford, 301 F.3d at 1050; cf. Inouye, 504 F.3d at 712 n.6 (explaining that the inquiry into the reasonableness of the defendant's mistake is not the "third" step in the Saucier analysis, but rather, is part of the second step of Saucier's two-step analysis).

149.     "The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Huff v. City of Burbank, 632 F.3d 539, 549 (9th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). 34 Saucier mandated that the two steps be resolved in sequence, but

the Supreme Court later held that the sequence, while "often appropriate," "should no longer be regarded as mandatory." Pearson, 555 U.S. at 236. Rather, the "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. See also A.D. v. Markgraf, 636 F.3d 555, 559 (9th Cir. 2011) (stating that the court need not proceed through the two-step inquiry sequentially); Bardzik v. County of Orange, 635 F.3d 1138, 1145 n.6 (9th Cir. 2011) (recognizing option to address only the clearly-established step, but concluding that addressing whether there was a constitutional violation was proper under the circumstances); Liberal v. Estrada, 632 F.3d 1064, 1076 (9th Cir. 2011) (explaining that the court may exercise its discretion in deciding which of the two prongs should be addressed first in light of the particular case's circumstances); Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (recognizing Pearson and addressing only the second prong of the qualified immunity analysis, which was dispositive). Although "the Saucier protocol should not be regarded as mandatory in all cases," the Court "continue[s] to recognize that it is often beneficial." Pearson, 555 U.S. at 236. Whether the defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure legal questions for the court. See Serrano v. Francis, 345 F.3d 1071, 1080 (9th Cir. 2003); Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003); see also Huff, 632 F.3d at 548 (explaining that whether the law was clearly established at the time of the alleged violation is a pure question of law); Kennedy, 439 F.3d at 1059-60 (explaining that whether a clearly established constitutional right was violated is an "abstract issue of law relating to qualified immunity"); Cunningham v. City of Wenatchee, 345 F.3d 802, 807-10 (9th Cir. 2003) (same). However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." Serrano, 345 F.3d at 1077; see also Martinez, 323 F.3d at 1183-85 (holding that the district court erred by granting summary judgment where there were genuine issues of material fact regarding the reasonableness inquiry of the second Saucier prong). (a) Identifying the Right When identifying the right that was allegedly violated, a court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than all of the factual circumstances surrounding the alleged 35 violation. See Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092-93 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979-80 (9th Cir. 1996); Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995); Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993). For example, the statement that the Eighth Amendment guarantees medical care without deliberate indifference to serious medical needs is a sufficiently narrow statement of the right for conducting the clearly established inquiry. See Kelley, 60 F.3d at 667; see also Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996). (b) Clearly Established Right A

government official "cannot be expected to predict the future course of constitutional law, but [the official] will not be shielded from liability" for acts that violate clearly established constitutional rights. Procunier v. Navarette, 434 U.S. 555, 562 (1978) (citations omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This inquiry must be "undertaken in light of the specific context of the case." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009). See also A.D. v. Markgraf, 636 F.3d 555, 561 (9th Cir. 2011); Delia v. City of Rialto, 621 F.3d 1069, 1078 (9th Cir. 2010); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1240-41 (9th Cir. 2010). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Hope v. Pelzer, 536 U.S. 730, 739 (2002); A.D., 636 F.3d at 560- 61; Delia, 621 F.3d at 1078; Rodis v. City & County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009); Eng v. Cooley, 552 F.3d 1062, 1075 (9th Cir. 2009); CarePartners, LLC v. Lashway, 545 F.3d 867, 876 (9th Cir. 2008); Fogel v. Collins, 531 F.3d 824, 833 (9th Cir. 2008); Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060-61 (9th Cir. 2006); Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002); Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002) . The court has stressed that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Dunn v. Castro, 621 F.3d 1196, 1201 (9th Cir. 2010).

150.     "Whether the law was clearly established is an objective standard; the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011) (internal quotation marks and citation omitted). 36 To conclude that the right is clearly established, the court need not identify an identical prior action. See Anderson, 483 U.S. at 640; see also Hope, 536 U.S. at 739; Rodis, 558 F.3d at 969; Fogel v. Collins, 531 F.3d 824, 833 (9th Cir. 2008); Kennedy, 439 F.3d at 1065-66; Motley v. Parks, 432 F.3d 1072, 1089 (9th Cir. 2005) (en banc); Sorrels, 290 F.3d at 970; Malik v. Brown, 71 F.3d 724, 727 (9th Cir. 1995); Browning v. Vernon, 44 F.3d 818, 823 (9th Cir. 1995). Absent binding precedent, the court should consider all relevant precedents, including decisions from the Supreme Court, all federal circuits, federal district courts, and state courts; in addition, the court should consider the likelihood that the Supreme Court or the Ninth Circuit would decide the issue in favor of the person asserting the right. See Elder v. Holloway, 510 U.S. 510, 512, 516 (1994); see also Hope, 536 U.S. at 739-46; Dunn, 621 F.3d at 1203 (stating that court may look to precedent from other circuits); Inouye, 504 F.3d at 714-17; Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004); Osolinski v. Kane, 92 F.3d 934, 936, 938 n.2 (9th Cir. 1996).

For guidance as to when prior law clearly establishes a right, see Saucier, 533 U.S. at 202 ("facts not distinguishable in a fair way from facts presented in the case at hand"). Compare Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450-51 (9th Cir. 1995) (concluding that Title VII employment-discrimination law concerning sexual harassment could not serve as the basis for a clearly established right for purposes of a sexual-harassment claim brought under a similarly worded provision of Title IX, which seeks to prohibit sex discrimination in education) with Bator v. Hawaii, 39 F.3d 1021, 1028 n.7 (9th Cir. 1994) (finding Title VII case law relevant to determination of clearly established rights under Equal Protection Clause because both are directed at ending gender discrimination). See also Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092 n.1 (9th Cir. 1998) (stating that a single district court opinion from out of the circuit is insufficient to demonstrate a clearly established right). Once a court determines that "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing [the official's] conduct." Harlow, 457 U.S. at 818-19. Even if the plaintiff has alleged violations of a clearly established right, the government official is entitled to qualified immunity if he or she made a reasonable mistake as to what the law requires. See Saucier, 533 U.S. at 205; Kennedy, 439 F.3d at 1061; Wilkins v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003); Estate of Ford, 301 F.3d at 1050; Newell v. Sauser, 79 F.3d 115, 118 (9th Cir. 1996); Schroeder v. McDonald, 55 F.3d 454, 461-62 (9th

151.    Moreover, unlawful enforcement of an otherwise valid statute demonstrates unreasonable behavior depriving the government official of qualified immunity. See Pierce v. Multnomah County, Or., 76 F.3d 1032, 1037 (9th Cir. 1996); Chew v. Gates, 27 F.3d 1432, 1450 (9th Cir. 1994).

152.    Summary Judgment Although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. See Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003); Wilkins v. City of Oakland, 350 F.3d 949, 955-56 (9th Cir. 2003); Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Martinez v. Stanford, 323 F.3d 1178, 1183-85 (9th Cir. 2003).

153.    Theory of Liability Even if deprivation represents an abuse of authority or lies outside the authority of the official, if the official is acting within the scope of his or her employment, the person is still acting under color of state law. See Anderson, 451 F.3d at 1068-69; McDade, 223 F.3d at 1140; Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

154.    The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 30-31 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003); Ashker v. Cal. Dep't of Corr., 112 F.3d 392, 394-95 (9th Cir. 1997); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam)".

155.    All GC Police Officer that was on the scene (including Sergent Punch and the Supervisor that was made aware via Plaintiff's 911 and hung up the phone on Plaintiff) are liable. "***Thus, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" Malone, 2014 WL 5781001, at \*16 (quoting Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013)***".

156.    Plaintiff has cell phone video and audio of the entire incident of which will show how **_comfortable_** Officer Russelle, Sgt Punch, the other officers were in violating my rights and watching my rights be violated.

160.    The Supervisor that hung up, identified me on the phone, heard me crying out for help, and was **_comfortable_** with hanging up and not doing anything.

161.    The traffic court is **_comfortable_** with violating my due process right and protecting the officer's.

162.    Such **comfortability** is **rooted** in the fact that The County of Nassau allows the defendants to operate with impunity, no oversight, and no accountability, thereby creating a **"custom"**, and policy that allows its agencies and employees to violate the plaintiff's rights, such is based on facts that Plaintiff can show and not mere conclusions.

163.    GC traffic court knows that they have no jurisdiction over the 1 ticket and a trial on the other 2 would give the Plaintiff the opportunity to question Officer Russelle, under oath, and later use his testimony to impeach him in a civil case.

164.    The GC court knows that if it just simply dismisses the tickets, it will still look bad for Officer Russell, (creating yet another "***direct link***" to the defendant, by protecting him, which is now creates "***Conspiracy***" under Federal Law.

165.    Based on the facts stated herein and evidence that can be presented, review of every traffic stop, ticket written, and arrest made by Officer Russell needs to be reviewed, and Plaintiff will seek such Public Information as discovery related material and / or a FOIL.

## Damages:

166.    Plaintiff seeks compensatory damages and punitive damages as follow:

- Garden City Incorporated Village 5 million U. S. dollars

- County of Nassau, 4 million U.S. dollars

- Kenneth O. Jackson, Police Commission, 3 million U. S. dollars

- Officer Russell: 2.5 million US dollars

- Sergeant Punch: 1.5 million U.S. dollars

- Supervisor that hung up the phone: $100,000 U.S. dollars

- Each Officer on the scene / John Doe(s) $100,000 U.S. dollars each

## Speedy Trial Violation NYS Law Unconstitutional

1. On or about March of 2023 Plaintiff submitted to the Garden City Traffic Court (GCTC) a Speedy Trial request pursuant to The U.S. Constitution and NYS CPL 30:30.

2. As of the date of this writing, (10/8/2023); Plaintiff's request for a speedy trial has gone unanswered by the GCTC, and as a result has inferred with the Plaintiff's ability to secure employment and earn a living.

3. Since I was a child, I dreamed of becoming a bus driver, (Plaintiff is 55 yrs old now).

4. I used to watch the Honeymooners; where Jackie Gleason played Ralph, the bus driver.

5. I gave up my dream to drugs, primarily crack cocaine, eventually racking up about 5 misdemeanors, 7 felonies, 4 NYS prison terms, and so many parole violation that I've lost count.

6. Homelessness and dereliction and engaging in criminality to support a drug habit was my life.

7. In 2009, I was on the run from parole and in my twisted mind I thought "if I don't get high, I don't commit crime. So let me not get high, it will decrease my chances of being arrested while copping drug's and stealing".

8. Much to my surprise, for the 1st time ever, I somehow stayed clean.

9. 1 year turned into 2, 2 turned into 3, and within that time I was being offered all sorts of positive opportunities and meaningful relationships that I had to turn down to avoid detection and remain free, but I wasn't free.

10. On or about Feb of 2012, after 3 years clean, yet a fugitive from parole, I walked into the 73 police prescient and turned myself in, little did I know that I was not only wanted by NYS parole, but there was a warrant for me for a commercial burglary that I committed back in 2009 before I got clean (DNA hit).

11. I plead guilty to the new burglary, received a 1- 1/2-to-3-year term, and my parole which was from a prior indeterminate sentence expired while doing the new term.

12. I was CR after 2 years, successfully completed 1 yr parole and have not looked back.

13. At the time of this writing, I have 19 years, continuous, uninterrupted time clean and sober, 19 years since I've committed a crime, 11 years since I turned myself in and over 10 years since I pleaded guilty; 10 years conviction free.

14. I am proud to say that this is the longest that I have not been under any justice supervision 1986; to be totally transparent: supervision for me goes back to PINS Petition(s), custody of The Jewish Board of Family Services, and Spofford.

15. Since my 2013 conviction for the crime committed in 2009, I've had to overcome many obstacles related to employment as a direct result of the Unconstitutional Laws and Policies adopted by NYS.

16. Although this may not be the proper venue, I want to point out that after my release in 2014, I would attempt to obtain a job and when the background check would come back, it would show that I was convicted in 2013, but it did not state that the criminal behavior actually occurred in 2009.

17. 5 years passed, 3 of which although a fugitive, I did not violate the law, and it's very important for employer to know that because time plays a large part in how much a person may have been rehabilitated, even according to NYS when issuing certificates.

18. The only thing records showed in 2014, when I was released on parole is that only 1 year ago (2013), I was convicted for Burglary 3rd degree which automatically wouldn't allow me to get my foot in the door to explain that it happened in 2009.

19. All NYS criminal records are prejudicial, and my only option was to track down the DA, stopping her from doing her job because I had to explain to her that I can't find anything that states when the crime occurred and ask her if she could please give me a letter explaining.

20. A week after she spoke with her supervisor she stated, "Mr. Owens you right, there is nothing to explaining the date, after speaking with my supervisor, our office is always willing to help a person tur there life around, when would you like to pick up the letter".

21. My point is this: the above # 20 is just 1 example of an unchecked issue perpetuated by NYS that prevents an ex-offender, from obtaining employment, reminding the Court that the States pour millions of dollars into pre and post release employment assistance, yet their Law and Policy interferes with an ex-offender that have been or currently in that situation.

22. In 2017, I got my driver's license at age 46, and immediately applied for a bus driver position with NICE Bus Company which services Nassau County.

23. After waiting 6 years, in August of this year I was called in to interview with NICE, and on September 3, 2023, during the interview and after overcoming my past criminal history with the hiring manager; I was offered and signed the paperwork for a position as a driver for able ride (paratransit), with free CDL classes to prepare me to drive the bus.

24. As I was about to leave, the hiring manager asked, "oh, by the way do you have any tickets or any court cases pending"?

Case 2:23-cv-07730-JMA-ST   Document 1   Filed 10/13/23   Page 35 of 42 PageID #: 35

25. I stated yes, and tried to explain the circumstances surrounding the 3, unlawful tickets and that I put in a motion to dismiss and speedy trial request in March, but the court never answered anything I send them.

26. After I revealed everything to the hiring manager, whose best interest is for his company and not law or civil rights violations, he stated to me, "those are serious tickets, and in Garden City where we're located. I can't put you through, I will have to rescind the offer".

27. Thereafter in September I contacted the GCTC Clerk and explained to her how none of motions have been answered, and I cannot obtain employment with these charges pending.

28. At that time, the clerk informed me that my trial was scheduled to take place back in August, but "we errored in communicating that to you, your scheduled for Oct. 23, 2023".

29. It is Plaintiff's position that NYS Law Maker(s) and the Court(s) are in violation of my Constitutional Right by not applying the Speedy Trial Amendment to Traffic Tickets.

30. I have not been able to secure employment because of the lack of prosecution of the tickets.

31. The same a traffic ticket, that pending, has the exact same results that a pending Misdemeanor or felony has on an accuses' ability to be free from government interference.

32. I have no ability to "contract" with an employer because I must tell them about the pending tickets, which automatically raises an employer's eyebrow; especially if one is already an ex-offender.

33. The purpose of a speedy trial was to avoid an accused from having to deal with what's been happening to me with GCTC.

34. The Founding Father's original intention for creating a speedy trial, is to avoid exactly what has been happening to me.

35. Many Village Traffic Court Judges are not lawyers, they do not possess the values, justice, understanding of law(s) the way one with a lawyer's background would.

36. Because of the current Law(s), we have judges, not trained in law, that have no accountability to answer motions and can let a traffic ticket sit pending for as long as they want. (I believe 2 years was the longest according to case law).

Page **35** of **42**

37. They are not concerned with the negative, impact that pending tickets are having on the lives of Americans and as such many other Constitutional Amendments are violated: freedom, and liberty stretches far beyond detention.

38. The right to be heard, the right to confront my accuser, 7 months has passed since I put the motions in, all video evidence that I could have obtained at the location is lost, witnesses lost, employment lost, careers lost, traffic court do what they want because the law(s) that is supposed to protect me from this from happening is not applied to a traffic ticket.

39. I have no real skill set, having a driver's license, in this day and age is a great value; plenty of driver jobs in society; from Amazon to Walmart, delivery and driving is the only way many like me, so similarly situated can be of great value to society and earn a living, by just driving; including delivering food via Uber, Door Dash.

40. Times has changed and the law that allows traffic court judges to do what they want has to change as well because having tickets pending until a judge wants has caused me a great deal of anxiety, stress, fear when having to tell an employer, depression, worry, this form of government and law is far more oppressive than a felony or misdemeanor charge pending, because there is no gauge for the accus to know when it will possible be over.

41. Federal and State Judges cannot do what they want to an accused, why are these Judges, that have not sworn the same oath that The Other Court has, and have no jurisprudence be allowed to operate traffic cases with impunity.

42. My 3 traffic tickets state that if I fail to answer I can go to jail, it also states that the deposition is pursuant to Criminal Law Section 710.30(A), it a compulsory instrument that is unlaw Criminal Law, yet not under criminal law because it's said not to be a crime, its contradiction of law and it goes against the U.S. Constitution.

43. A traffic stop requires probable cause, which is of a higher degree than reasonable suspicion, yet at the same time; it receives no Due Process Protections.

44. I turn the Court's attention to in NYC Jails and NYS Prison's: If a convicted felon, incarcerated inside these penal institutions violates a rule (focusing on minor violations), under Corr. Law, State and Federal Law(s) and ruling(s) it's called a "violation".

45. If "observed" the prisoner staff, that prisoner is issued a "misbehavior report" also known as a "ticket".

46. The Law demands that prison official MUST commence a hearing and complete / dispose of the Ticket within a certain amount of time, or it's a Violation of that prisoner's Due Process right(s).

47. Yet a civilian, a free person, not under any penal institution's authority, receives traffic ticket(s) and we do not have the right afforded to us to have our day in Court, within a specific time, according to the law.

48. We have more to lose than an incarcerated person; they lose privileges, cookies, candy from the commissary, they lose a few day's recreation, and phone calls, I lost a dream career by having tickets just sitting, pending before a court that can get to it whenever they get around to it because the Due Process Law(s) are not being equally applied.

49. This is classic "justice delayed, is justice denied" and I ask that this Court revisit this issue or allow this to go before the U.S. Supreme Court once again in lite of the change in times and the grave miscarriage of justice found in no speedy trial protections for individuals accused of traffic violations.

## **New York State**

9 CRR-NY 7006.8NY-CRR
OFFICIAL COMPILATION OF CODES, RULES AND REGULATIONS OF THE STATE OF NEW YORK
TITLE 9. EXECUTIVE DEPARTMENT
SUBTITLE AA. STATE COMMISSION OF CORRECTION
CHAPTER I. MINIMUM STANDARDS AND REGULATIONS FOR MANAGEMENT OF COUNTY JAILS AND PENITENTIARIES
SUBCHAPTER A. MINIMUM STANDARDS AND REGULATIONS
PART 7006. DISCIPLINE

### 7006.8 The disciplinary hearing.

(a) An inmate charged with a violation in accordance with section 7006.4 of this Part shall receive a hearing within 15 business days of receipt of the misbehavior report. The inmate shall be given at least 24 hours prior written notice of the hearing..**New York City Jails**

**N.Y. Comp. Codes R. & Regs. tit. 9 § 7006.8**

Section 7006.8 - The disciplinary hearing**(a)** An incarcerated individual charged with a violation in accordance with section 7006.4 of this Part shall receive a hearing within 15 business days of receipt of the misbehavior report.

**Wherefore:** Claimant respectfully submits this complaint to the Court seeking all relief herein requested and any other relief that the Court finds just and proper.

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above

action, that he/she has read the above complaint, and that the information contained therein is true.

and correct. 28 U.S.C. §1746; 18 U.S.C §1621. Executed on 20___. (Location) (Date)

Claimant _____

Officer **John Russelle** intentionally showing Plaintiff that the tickets were completed, then him putting them down ignoring Plaintiff's cries to "please give the tickets and my lisence so I can leave. January 7 2023




**Plaintiff: January 7, 2023**



**Retired Correction Officer Ronald Lanier announced filing of his lawsuit in June 2017. Photo Credit: Howard Schnapp**

*"He had accused two white Garden City police officers, George Byrd and John Russell, of racially profiling him at the Western Beef grocery store in Mineola. They were seeking an African American man who had allegedly shoplifted a purse from a village store and ran into the supermarketThe retired Nassau County correction officer, who said village police officers violated his civil rights at a grocery store, will receive $150,000. LONG ISLAND / NASSAU Retired Correction Officer Ronald Lanier announced filing of his lawsuit in June 2017. Photo Credit: Howard Schnapp By Stefanie Dazio Updated May 14, 2018 9:40 PM stefanie.dazi"*

**Plaintiff: if the suspect was other than white, it is my position Officer Russelle racially profiled him. Officer Russelle is not a hero, he is a PREDIDTOR.**

Posted Thu, Oct 12, 2017 at 8:00 am ET|Updated Fri, Oct 13, 2017 at 10:36 am ET
Reply



Garden City Police Officer John Russell's keen sense of awareness – even while off the clock – helped detectives remove a dangerous predator from the streets.

Earlier this year, *__Police Officer Russell while off duty in his private vehicle, on his way to Police Headquarters, observed a vehicle driving unusually slow in a suspicious manner__* through an adjacent parking field. He recalled that a similar vehicle was being sought in connection with a number of public lewdness complaints in the Village. Officer Russell obtained the vehicle's registration and a description of the operator, which he forwarded on to Garden City detectives.

Garden City has a history of racial discrimination: it's in their schools, their court, their housing, their police and in the entire government.

The County of Nassau which gives Garden City its power has known this and have done nothing to fix the issue; I am here writing this and you're here reading this as a result of the "custom', and "policy."

*HOW DOES THIS CONNECT TO STRUCTURAL RACISM?*

*Many majority white neighborhoods on Long Island, such as Garden City, were originally populated through racial covenants and overt forms of housing discrimination that denied access to people of color. Today subtle forms of housing discrimination persist and result in discrimination against non-whites. Since racially segregated neighborhoods create an unspoken understanding of who belongs and who does not belong, people of color are more likely to be treated with suspicion in majority white spaces. Today Garden City Village is 0.1% black. This type of stark segregation most likely led the police officers to automatically assume that Lanier was the black suspect that they were searching for. This is why they did not bother to question him upon their arrival and instead resorted directly to force. Even when Lanier used a phrase to identify himself as a fellow police officer he was still treated as the suspect".*

Garden City is a city located in <u>Nassau County</u> <u>New York</u>. Garden City has a 2023 population of **22,830**. Garden City is currently declining at a rate of -0.43% annually and its population has decreased by -1.29% since the most recent census, which recorded a population of **23,129** in 2020.

The average household income in Garden City is $252,293 with a poverty rate of 2.45%. The median rental costs in recent years comes to - per month, and the median house value is -. The median age in Garden City is 41.6 years, 42 years for males, and 40.2 years for females.

# Garden City Demographics Garden City Population by Race

<u>US Census 2021 ACS 5-Year Survey (Table B03002)</u>
<u>Hispanic Origin</u>

According to the most recent ACS, the racial composition of Garden City was:

- White: 88.22%
- Asian: 5.43%
- Two or more races: 3.95%
- Other race: 1.86%
- Black or African American: 0.54%
- Native American: 0%
- Native Hawaiian or Pacific Islander: 0%

**Court affirms racial discrimination in Garden City**

David Winzelberg //September 26, 2017

After multiple court decisions that found the Village of Garden City discriminated against minorities through its zoning, another ruling has upheld those findings.

Federal Eastern District Court Judge Arthur Spatt ruled last week that the 2004 zoning decision by the village had an unjustified disparate impact on African Americans and Latinos in violation of the federal Fair Housing Act.

# Judge Finds Discrimination in Garden City Zoning

Eastern District Judge Arthur Spatt said Friday the village of Garden City's rejection of a planned "affordable housing" complex had a negative impact on minorities and ordered the village to submit a plan outlining remedy. By Associated Press and Andrew Keshner | Updated on December 09, 2013

# Appeals Court Upholds Ruling that Village of Garden City Intentionally Discriminated By Zoning Out Affordable Housing; Nassau County Must Now Stand Trial for Affordable Housing Steering Policy