UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ERIC OWENS,

                                      Plaintiff,

        -against-

THE INCORPORATED VILLAGE OF GARDEN CITY *et al.*,

                                     Defendants.
-------------------------------------------------------------------X

(For Electronic Publication Only)

**MEMORANDUM & ORDER**
23-cv-07730-JMA-ST

FILED
CLERK
11/8/2024 11:24 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

On October 13, 2023, Plaintiff Eric Owens filed a pro se complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Fourth Amendment and Fourteenth Amendment rights in connection with the issuance of three traffic summonses pending in the Village of Garden City Justice Court ("Garden City Justice Court"). (ECF No. 1 ("Compl.").) Read liberally, Plaintiff's complaint further asserts claims for (1) failure to intervene; (2) defamation; (3) intentional infliction of emotional distress; and (4) malicious prosecution. (Id.) On May 15, 2024, Plaintiff filed the instant motion asking this Court to intervene in the proceedings of the Garden City Justice Court to dismiss three traffic summonses. (ECF No. 15 ("Pl's Mot.").) Defendants filed an opposition motion arguing that this Court lacks jurisdiction to adjudicate the pending traffic summonses. (Id. ("Defs.' Mot.").) For the below reasons, the Court DENIES Plaintiff's motion to dismiss the three traffic summonses.

## I.     BACKGROUND[1]

**A.     <u>Factual Background</u>**

This matter concerns various claims by Plaintiff relating to a January 7, 2023 traffic stop, the issuance of three summonses for traffic violations, and the purported delay in adjudicating those summonses in the Garden City Justice Court. On January 7, 2023, Plaintiff was stopped by Police Officer Russell ("Officer Russell") and issued three traffic summonses. (Compl. ¶¶ 10, 39.) The summonses were issued for: (1) speeding in violation of N.Y. VTL § 1180(d); (2) driving across hazard markings in violation of N.Y. VTL § 1128(d); and (3) unsafe start in violation of N.Y. VTL § 1162. (Pl's Mot. at 3, 25-28.) When stopped, Plaintiff initially refused to provide Officer Russell with his name or identification and requested that a supervisor come to the scene. (Compl. ¶¶ 12-16.) Sergeant Punch and other officers then arrived at the scene, and Plaintiff claimed to them that he had not committed any traffic violations and that Officer Russell had purposefully followed Plaintiff and initiated the traffic stop due to Plaintiff's status as an African American male. (<u>Id.</u> ¶ 18.).

About thirty minutes into the traffic stop, Plaintiff gave his name and information to the officers. (<u>Id.</u> ¶ 21.) Plaintiff alleges that, at this point, the officers delayed the traffic stop while purportedly writing out the traffic summonses. (<u>Id.</u> ¶¶ 25-27.) According to Plaintiff, the officers refused to let him leave the scene, causing him to panic and have an anxiety attack. (<u>Id.</u>) Plaintiff further alleges that he notified the officers that he has medical conditions that make it painful for him to sit in a vehicle for long periods of time. (<u>Id.</u> ¶ 29-30.) Plaintiff states that he called 911 to report that the officers had wrongfully stopped him and refused to let him go, but the 911 dispatcher

---

[1]     This Memorandum and Order draws its facts from Plaintiff's complaint (ECF No. 1 ("Compl.")), Plaintiff's Motion to Dismiss the three traffic summonses (ECF No. 20 ("Pl.'s Mot.")), Defendants' Memorandum of Law in Support of their Motion to Dismiss (ECF No. 20 ("Defs.' Mot.")), and the declarations and exhibits attached to all the above-mentioned filings.

hung up on him. (Id. ¶¶ 31-34.) Plaintiff then approached Officer Russell's police car to request that the summonses be issued so that the traffic stop could conclude, and Officer Russell gave Plaintiff the three traffic summonses. (Id. ¶¶ 37-39.) The traffic stop concluded after approximately forty minutes. (Id. ¶ 46.)

Plaintiff alleges that Defendants intentionally profiled him, followed his vehicle, and unlawfully stopped him and issued him the traffic summonses due to his status as an African American male. (Id. ¶ 40.) Plaintiff further disputes that he violated any of the relevant traffic ordinances at issue. (Pl.'s Mot. at 3-4.) On March 28, 2023, Plaintiff filed a motion to dismiss the traffic summonses in the Garden City Justice Court.² (Id. ¶ 62; ECF No. 6, Pl's Ex. 1 at 14-32.) That motion is still pending, and the three traffic summonses have not yet been adjudicated. (Compl. ¶ 67; Defs.' Mot. at 1.) Plaintiff alleges that the Garden City Justice Court has continuously delayed in responding to his motions or setting a trial date for the traffic summonses.³ (Pl's Mot. at 11-12.)

**B.    Procedural History**

On October 13, 2023, Plaintiff commenced this action in federal court contending that Defendants violated his rights under the Fourth and Fourteenth Amendments to the U.S.

---

² In Plaintiff's Motion to Dismiss the traffic summonses in the Garden City Justice Court, he argues that (1) the Garden City Justice Court lacks subject matter jurisdiction for the unsafe start violation because it occurred outside of the village of Garden City; (2) his Constitutional rights were violated by the police officers who pulled him over and detained him without probable cause; and (3) he did not commit any of the alleged traffic violations at issue. (ECF No. 6, Pl's Ex. 1 at 14-32.)

³ Plaintiff alleges that he made repeated calls to the clerk of the Garden City Justice Court, who stated that no trial date had been set yet regarding the traffic summonses. (Compl. ¶ 163.) Plaintiff further alleges that the Garden City Justice Court is refusing to give him a trial date in order to protect the officers involved with his traffic stop, in violation of New York State's "speedy trial" statute, N.Y. Crim. Proc. Law § 30.30 ("CPL 30.30"). (Id. at 32-35.) However, the Court notes that New York State courts have held that CPL 30.30 does not apply when a defendant is only charged with traffic infractions. See People v. Waksal, 166 N.Y.S.3d 824 (N.Y. App. Term. 2022). This is because CPL 30.30(1)(d), which sets forth the relevant time period when a defendant is charged only with a non-criminal offense, requires that one of the offenses be a "violation," and a "violation" is defined as "an offense, other than a 'traffic infraction.'" N.Y. Penal Law § 10.00(3) (McKinney). Plaintiff alleges that the failure to apply the CPL § 30.30 "speedy trial" requirement to traffic infractions is unconstitutional. (Pl's Mot. at 7-9.) Plaintiff further alleges that the Garden City Justice Court is delaying adjudicating his traffic summonses based on "a policy and custom of racism, bias . . . and unfair treatment of . . . Black and Brown People." (Id. at 16.)

Constitution. (ECF No. 1, Compl. at 8-9.) Read liberally, Plaintiff's complaint further asserts claims for (1) failure to intervene; (2) defamation; (3) intentional infliction of emotional distress; and (4) malicious prosecution. (Id.)

On November 27, 2023, Plaintiff filed a motion asking this Court to dismiss the three traffic summonses. (ECF No. 6, Pl's Mot.) On November 28, 2023, this Court issued an Order directing Plaintiff to serve the complaint on Defendants by January 11, 2024. (ECF. No. 5.) Defendants filed an answer on December 26, 2023. (ECF No. 14.) On January 16, 2024, Plaintiff's motion to dismiss the underlying traffic summonses was denied without prejudice for failure to first request a pre-motion conference in accordance with this Court's Individual Rules. (Elec. Order dated January 16, 2024.) On March 4, 2024, Plaintiff moved to renew his motion to dismiss the traffic summonses. (ECF No. 18.) Plaintiff's motion to renew was granted on April 18, 2024, and the fully briefed motion was filed on May 15, 2024. (ECF No. 20.)

## II.   DISCUSSION

**A.   Standard of Review**

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the Court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); see also FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do

justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

**B.**    **The Younger Abstention Doctrine Requires the Court to Abstain from Intervening in Plaintiff's State Court Proceedings**

Under Younger v. Harris, 401 U.S. 37 (1971), federal courts generally are required to abstain from "taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002). Although abstention is not routinely exercised, it is required when: (1) there is pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003); see also Diamond "D" Constr. Corp., 282 F.3d at 198. The Younger abstention doctrine applies to state criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. See Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013). If the relevant factors are present, this Court is required to abstain from exercising jurisdiction over the action based on concerns for comity, unless there is a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 54. The concern for

5

comity and deference to the state dissipates when the state proceeding is brought with "malevolent intent" or "no legitimate purpose." Double "D" Constr. Corp., 282 F.3d at 200.

The first Younger requirement of an ongoing state proceeding is satisfied, as it is undisputed that Plaintiff has three pending traffic summonses before the Garden City Justice Court. (Compl. ¶¶ 62, 67; Defs.' Mot. at 1.) Plaintiff's motion to dismiss those traffic summonses is still pending before the Garden City Justice Court, and the three traffic summonses have not yet been adjudicated. (Id.; ECF No. 6, Pl's Ex. 1 at 14-32.) The Garden City Justice Court has jurisdiction over matters involving New York State Vehicle & Traffic Law violations and is empowered by New York State law to adjudicate these traffic infractions, including Plaintiff's currently pending traffic summonses. N.Y. Gen. Mun. Law § 371-a; Inc. Village of Garden City Code, Chapter 47, Traffic Violations Bureau.[4] Furthermore, the Garden City Justice Court proceedings are to be considered together with any subsequent state court review as a "unitary process" when determining whether Younger abstention is appropriate. See Fund v. City of New York, No. 14-CV-2958, 2014 WL 2048204, at *9 (S.D.N.Y. May 19, 2014) (finding "that when state or local administrative proceedings are subject to state-court review, it is not appropriate for a federal court to interfere in the dispute until the federal plaintiff has exhausted the possibility of remedy in state court"). The Court finds that the Garden City Justice Court proceeding constitutes a civil enforcement proceeding which is "akin to a criminal prosecution in important respects" and is

---

[4] Chapter 47, Section of the Village of Garden City Code reads: "Pursuant to Article 14-B of the General Municipal Law of the State of New York, as amended, the Justice Court of the Incorporated Village of Garden City, being the court having jurisdiction of traffic cases, is hereby authorized to establish a Traffic Violations Bureau to assist said court in the disposition of offenses in relation to traffic violations." Furthermore, the Garden City Village Justice Court's website reads: "The Garden City Justice Court is part of the Unified Court System of the State of New York. It hears all matters involving summonses for parking offenses, building violations, New York State Vehicle and Traffic Law violations and misdemeanors, Tax Law, and other matters New York State has placed under Village jurisdiction. The Court may impose fines, sentence convicted defendants to imprisonment, or enter into agreements with defendants to perform community service in lieu of traditional sentencing." See https://www.gardencityny.net/190/Justice-Court; see also T.W. v. New York State Bd. of L. Examiners, 996 F.3d 87, 95 (2d Cir. 2021) ("The Unified Court System . . . is the name for the entire New York State judiciary[.]").

therefore subject to Younger abstention. Sprint Commc'ns, Inc., 571 U.S. at 79 (citation and internal quotation marks omitted). Thus, the first Younger requirement is met here.

The second Younger requirement of an important state interest is also satisfied, as the state court system has an important interest in "enforcing, and determining the constitutionality of, its traffic laws." Sander v. Twp. of Coxsackie Ct., No. 23-CV-783, 2023 WL 6283510, at *5 (N.D.N.Y. Sept. 27, 2023), report and recommendation adopted, 2023 WL 6929275 (N.D.N.Y. Oct. 19, 2023) (citing Medrano v. Margiotta, No. 15-CV-3704, 2017 WL 880964, at *6 (E.D.N.Y. Feb. 16, 2017), report and recommendation adopted, 2017 WL 876293 (E.D.N.Y. Mar. 3, 2017)); see also Paul v. New York State Dep't of Motor Vehicles, No. 2-CV-8839, 2003 WL 253065, at *1 (S.D.N.Y. Feb. 3, 2003) (abstaining from intervening in state administrative proceeding and finding that the proceeding implicated "the State's important interest in regulating intrastate traffic and in the uniform enforcement of the state traffic laws").

Finally, the Court finds the last Younger factor, adequate opportunity to raise claims in state court, has also been met. "In the First and Second Departments . . . appeals from . . . town and village justice courts, are taken to an appellate term." McKinney's Forms Civil Practice Law and Rules § 2:3, "Subject-matter jurisdiction of New York state courts." Additionally, "Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government." Chaney v. City of Albany, No. 16-CV-1185, 2019 WL 3857995, at *13 (N.D.N.Y. Aug. 16, 2019). In his pending motion to dismiss before the Garden City Justice Court, Plaintiff has raised the same arguments he raises before this Court, namely that (1) the Garden City Justice Court lacks subject matter jurisdiction for the unsafe start violation because it occurred outside of the village of Garden City; (2) Plaintiff's Constitutional rights were violated by the police officers who pulled him over and detained him without probable cause; and (3) Plaintiff did not commit any of the alleged traffic

violations at issue. (ECF No. 6, Pl's Ex. 1 at 14-32.) Plaintiff further argues before this Court that the Garden City Justice Court has violated his right to a "speedy trial" under N.Y. Crim. Proc. Law § 30.30 and that the failure to apply the CPL § 30.30 "speedy trial" requirement to traffic infractions is unconstitutional. (Pl's Mot. at 7-9.) Nothing prevents Plaintiff from raising these arguments in state court, and this Court's ability to award damages, if appropriate, in the instant civil rights suit will not be impaired if this Court abstains from intervening and dismissing the three traffic summonses in the Garden City Justice Court.[5] See Morpurgo, 327 F. App'x 284 (holding that Younger abstention applied correctly to plaintiff's request for injunctive relief but did not apply to plaintiff's request for monetary damages).

Lastly, there is nothing to indicate that either the bad faith or extraordinary circumstances exceptions to Younger apply. See Diamond "D" Constr. Corp., 282 F.3d at 199 ("To invoke th[e bad faith] exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."); see also id. at 201 (noting Supreme Court's examples of extraordinary circumstances include a state statute which is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" and "when the state administrative agency was incompetent by reason of bias to adjudicate the issues pending before it") (citations and internal quotation marks omitted). While Plaintiff raises conclusory allegations that Defendants issued the traffic summonses and delayed his court proceedings in bad faith and as a means of harassing him, (Pl. Mot. at 2, 4, 11-12), nothing in the record demonstrates that the state proceeding was initiated for an illegitimate purpose or that the Garden City Justice Court "was incompetent by reason of bias." Diamond "D" Constr. Corp.,

---

[5] This Court intimates no view on the merits of these claims.

282 F.3d at 199; see also Iqbal, 556 U.S at 678 ("[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Based on the foregoing analysis, the Court concludes that the Younger abstention doctrine bars this Court from intervening in the proceedings of the Garden City Justice Court to dismiss Plaintiff's traffic summonses. Therefore, Plaintiff's motion to dismiss the three traffic summonses is DENIED.

### III. CONCLUSION

For the above reasons, Plaintiff's Motion to Dismiss the three traffic summonses is DENIED. The Clerk of the Court is respectfully directed to mail a copy of this Memorandum and Order to pro se Plaintiff at his address of record and file proof of service on the docket. Additionally, this case is stayed until after the disposition of Plaintiff's underlying state court proceedings. The Clerk of the Court shall administratively close this case. Plaintiff may request, in writing, that this case be reopened within two (2) weeks of the conclusion of his state court proceedings, if so warranted at that time.

Should Plaintiff seek leave to appeal in forma pauperis ("IFP"), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

Dated:  November 8, 2024
        Central Islip, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE